

MITCHELL SILBERBERG & KNUPP LLP
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Eleanor M. Lackman
Partner
(212) 878-4890 Phone
(917) 546-7675 Fax
eml@msk.com

August 2, 2021

VIA ECF

The Honorable Paul G. Gardephe, U.S.D.J.
Thurgood Marshall United States Courthouse
40 Foley Square, Room 705
New York, NY 10007

Re:     *Menzel v. BDG Media, Inc. et al*, No. 21-cv-05049 (PGG);
        Request for Pre-Motion Conference

Dear Judge Gardephe:

We are counsel for defendant BDG Media, Inc. ("BDG") in the above-referenced action.  In accordance with Section IV.A. of Your Honor's Individual Rules, we respectfully submit this letter to request a pre-motion conference with the Court in conjunction with BDG's proposed motion to dismiss plaintiff Peter Menzel's ("Plaintiff") Complaint.

This is an action for copyright infringement involving certain photographs (the "Photographs"), purportedly taken by Plaintiff (a serial litigator), which were subsequently used in an article posted to the website www.flavorwire.com ("Flavorwire") on ***August 31, 2011***, nearly ten years before Plaintiff filed this lawsuit (the "Article").  *See* Cplt. ¶ 9, Exh. B.  The Complaint is not clear as to whether the Photographs are registered, and if so, when; Plaintiff simply alleges that he "has applied for and/or received copyright registrations covering the [] Photographs." *Id.* ¶ 8.[1]  Instead of annexing the full Article to the Complaint, Plaintiff haphazardly copies and pastes selected portions to obscure the date the Article was posted, and the content of the Article.  *Id.*[2]  Attached hereto as **Exhibit A** is a screen capture of the full Article, with the Photographs removed (as they have been for years), and which may be considered at the pleading stage.  *See Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (in copyright case, documents incorporated by reference include "works in question"); *Minden Pictures, Inc. v.*

---

[1] As a threshold matter, Plaintiff's entire claim may be barred under *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019) (requiring registration of a copyrighted work before a suit can be initiated).  Plaintiff fails to identify the registration numbers and admits that the photographs may merely be "applied for." Cplt. ¶ 8.

[2] Indeed, on page 1 of Exhibit B to the Complaint, the date of the article, August 31, 2011, appears to be purposely (albeit unsuccessfully) cropped out.  *Id.* ¶ 9, Exh. B.  This was likely done because Plaintiff knows his claims are barred by the applicable statute of limitations.  *See infra* at pp. 4-5.  This omission is also suspect given that Plaintiff's counsel, well-versed in filing copyright claims involving online use of photographic works, routinely includes the date of the secondary use in complaints he drafts.  This obfuscation appears intentional, motivated by a desire to protract expensive litigation over a low-value claim to which BDG has no connection and which appears to be a fair use.



The Honorable Paul G. Gardephe, U.S.D.J.
August 2, 2021
Page 2

*BuzzFeed, Inc.*, 390 F. Supp. 3d 461, 466 (S.D.N.Y. 2019) (considering screenshots from defendant of posts containing the works).  The article is also publicly available at the website located at the following URL:  https://www.flavorwire.com/205437/photos-from-around-the-world-of-families-and-their-possessions.

The Article is entitled "Photos From Around the World of Families and Their Possessions," and it appears to promote Menzel's book and project "Material World: A Global Family Portrait."  *See* Exh. A.  The Article explains that "[p]hotographer Peter Menzel began his *project Material World: A Global Family Portrait* back in the '90s, traveling to 30 countries around the world to capture families with most of their possessions . . . Check out the resulting, slightly dated but utterly fascinating portraits in our gallery and see what sort of a material world we're living in." *Id.* (hyperlinks/underlining in original).  The word "project" hyperlinks to the website located at the URL www.pbs.com, which details the project that inspired Menzel's book.  *Id.*  The words "Material World: A Global Family Portrait" hyperlink to the Amazon listing where consumers can purchase Menzel's book.  *Id.*

Plaintiff's infringement claim against BDG is predicated on his allegation that "FLAVORWIRE published a post . . . on its website incorporating thirteen (13) of the Subject Photographs."  Cplt. ¶ 9.  But Plaintiff fails to explain how BDG was involved at all in a purported infringement that occurred a decade ago.  Indeed, instead of setting forth allegations sufficient to explain why BDG is even named as a party in this lawsuit, Plaintiff simply claims – in a conclusory fashion – that BDG "does business under its own name, Flavorpill Productions." *Id.* at p. 1.  The allegations that follow refer solely to the purported conduct of "FLAVORWIRE," which Plaintiff defines to include BDG, Flavorpill Productions, and "www.flavorwire.com." *Id.*  Again, Plaintiff excludes publicly-available information that is fatal to his claims: BDG only acquired Flavorwire in 2018, *seven years* after the Article was posted on the Flavorwire Website by someone else.  *See, e.g.*, Sara Fischer, *Exclusive: Bustle buys Flavorpill*, Axios (Aug. 14, 2018), *available at* https://www.axios.com/bustle-acquires-flavorpill-0390ea46-b832-4fc3-b227-842b60ff9b1d.html.

Effectively, Plaintiff is accusing BDG of acquiring a website that contained a previously-written Article with allegedly infringing content embedded therein.  Plaintiff fails to identify *any* volitional conduct by BDG as necessary to state a claim for copyright infringement.  Plaintiff does not claim that BDG copied the photographs or otherwise touched them in a way that would violate 17 U.S.C. § 106.  Plaintiff's claim should be dismissed for that reason alone.  Additionally, any claim that BDG is somehow responsible for the acts of its predecessor, Flavorpill Productions, Inc. ("Flavorpill"), is unfounded, as BDG acquired the Flavorwire *Website*, not Flavorpill, as part of an asset purchase of the website, domain names, and social media accounts.  Even more broadly, Plaintiff is attempting impermissibly to sue over a nearly ten-year-old article, well outside of the Copyright Act's three-year statute of limitations, and its claim must fail for that reason as well.[3]

---

[3] BDG reserves the right to assert various additional defenses in the event that this case is not dismissed, including that Plaintiff granted to whomever posted the Article a license.  Because BDG had nothing to do with the posting of the Article, which occurred long before it acquired the Flavorwire Website, it has not yet investigated this defense, though there is some indicia of a license on the face of the Article.



Notably, these exact issues have already been litigated, and resulted in the pleading-stage dismissal of similar claims. In *Tom Hussey Photography, LLC v. BDG Media, Inc.*, BDG's motion to dismiss was granted due to the fact that BDG did not commit a "volitional act" of copyright infringement in simply acquiring and maintaining the Flavorwire Website. *See* No. CV 20-404-MN, 2020 WL 7481770 (D. Del. Dec. 18, 2020). In *Minden*, which was litigated by Plaintiff's counsel's law firm, the plaintiff's claims relating to photographs posted online over three before the complaint was filed were dismissed at the pleading stage. *See* 390 F. Supp. 3d at 466. BDG's counsel made Plaintiff's counsel aware of these rulings and explained that his pursuit of this claim was a waste of both time and resources of the parties and this Court given the myriad of case law supporting BDG's defenses (discussed below), but he preferred to "ventilate the issues in litigation," necessitating this motion.

**<u>Plaintiff Fails to Allege Any Actionable Conduct by BDG.</u>** Plaintiff's Complaint must be dismissed for the threshold reason that it fails to allege any actionable copyright infringement by BDG. To allege a claim for copyright infringement, a plaintiff must demonstrate: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of plaintiff's work. *See Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Additionally, to state a direct copyright infringement claim, a plaintiff must allege "volitional conduct that causes the infringement." *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 742 (S.D.N.Y. 2012*), aff'd sub nom. Wolk v. Photobucket.com, Inc.*, 569 F. App'x 51 (2d Cir. 2014) (internal quotations and citations omitted); *Lopez v. Bonanza.com, Inc.*, No. 17 CIV. 8493 (LAP), 2019 WL 5199431, at *22 (S.D.N.Y. Sept. 30, 2019) ("The pivotal factor in determining whether there was such a volitional act is the initiation of the act of copying.") (internal quotations omitted). Here, Plaintiff does not allege *any actionable conduct by BDG* relating to the purported infringement, and it cannot, as BDG was not involved with the Flavorwire Website until seven years after the infringement occurred. Simply grouping BDG together with other defendants, and hoping to catch one on the hook for the conduct alleged, is insufficient to sustain a claim for copyright infringement under *Twombly*. *See* 550 U.S. 544, 558 (2007).

Even construing the pleadings in a manner most favorable to Plaintiff, Plaintiff alleges only that BDG now operates a website that used allegedly infringing content posted by someone else seven years before BDG was involved with that website (and two years before BDG even existed). But the law is clear that "the display of copyrighted images on a defendant's website does not demonstrate volition." *Wolk*, 840 F. Supp. 2d at 742–43; *see also Perfect 10, Inc. v. Giganews, Inc.*, No. CV11-07098 AHM SHX, 2013 WL 2109963, at *8 (C.D. Cal. Mar. 8, 2013), *aff'd*, 847 F.3d 657 (9th Cir. 2017). Indeed, the theory that a passive host can be liable for an infringement it did not "cause" was squarely rejected by the Second Circuit in *Cartoon Network LLLP v. CSC Holdings, Inc.* 536 F.3d 121, 130-33 (2d Cir. 2008); *see also VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 736 (9th Cir. 2019) (defendant did not violate display right based on infringing photos on website, where defendant did not "'exercise[ ] control' over these photos beyond the 'general operation of [its website].'") (citation omitted); *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1368-69 (N.D. Cal. 1995).

Simply put, an act alleged to be infringement in this context happens only once: when the photos are copied and displayed. Plaintiff has not alleged any new volitional conduct by BDG within the



The Honorable Paul G. Gardephe, U.S.D.J.
August 2, 2021
Page 4

three years preceding this lawsuit, and the purported continuing harm caused by the Photographs being posted to Flavorwire in 2011 cannot serve as a basis for never-ending liability against whomever might later come to own the website. *Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1099 (C.D. Cal. 2016).

To the extent Plaintiff is alleging that BDG could be held liable for the conduct of employees of Flavorpill Productions, Flavorwire's prior owner, it is well-settled that "a corporation which acquires the assets of another is not liable for the torts of its predecessor." *Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 244 (1983) (under New York law); *see also Douglas v. Stamco*, 363 F. App'x 100, 103 (2d Cir. 2010) (affirming dismissal because the "plaintiff [wa]s unable to substantiate a claim for successor liability under New York law"). And BDG's acquisition of the website does not violate any of the exclusive rights provided in the Copyright Act; as noted, that act of asset acquisition does not, in and of itself, result in any new reproduction, distribution, or display of the content available on the website.

**<u>Plaintiff's Copyright Infringement Claim is Untimely.</u>** Even were Plaintiff able to allege any volitional conduct on the part of BDG, its claims would nevertheless fail for another, independent reason – they are wholly barred by the Copyright Act's three-year statute of limitations, which accrued when the Article was posted in August of 2011. *See* 17 U.S.C. § 507(b); *see also Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014) ("[a] copyright claim thus arises or 'accrue[s]' when an infringing act occurs"). In *Minden*, the plaintiff, a serial litigator and photographer (represented by Plaintiff's counsel's law firm) brought a copyright infringement action against publisher BuzzFeed regarding BuzzFeed's use of various photographs taken by the plaintiff, including certain images posted over three years before the lawsuit was filed. *Id.* at 466. Like here, the plaintiff's counsel declined to include the dates of the relevant posts in the exhibits to the complaint; accordingly, the court took judicial notice of screenshots produced by defendant's counsel containing the dates the works at issue were posted. *Id.* In dismissing the claims involved the photographs posted over three years before the date the complaint was filed, the court opined, in pertinent part:

> The Second Circuit adheres to the "discovery rule": an infringement claim does not accrue until the copyright holder discovers, or with due diligence should have discovered, the infringement. Minden Pictures alleges that it discovered Buzzfeed's alleged infringement in 2017 and 2018 and had no reason prior to that discovery to know of Defendants' unauthorized uses . . . The Court concludes that a reasonable copyright holder in Minden Pictures' position – that is, a seasoned litigator that has filed 36 lawsuits to protect its copyrights, beginning as early as July of 2010 – should have discovered, with the exercise of due diligence, that its copyright was being infringed within the statutory time period … some of Buzzfeed's articles were posted as early as 2011, and Minden Pictures provides no explanation for its delayed filing of this lawsuit beyond its allegation that it had no reason to discover the alleged infringement prior to 2017 . . . .

> The Court finds that the claim as to the 24 photographs that were posted by Buzzfeed prior to March 19, 2015 are DISMISSED as time-barred.



*Id.* at 467-68 (internal quotations and citations omitted).  The Plaintiff here is also a serial litigant, having filed over 15 lawsuits in the past six years alone, and he should be held to the same standard as the plaintiff in *Minden*.[4]

To the extent Plaintiff argues that the continuous presence of the Photographs on the Flavorwire Website resets the clock for statute of limitations purposes, he is incorrect as a matter of law.  *See Wolf*, 167 F. Supp. 3d at 1099 (an "allegedly infringing document—published in 2010, outside the relevant three-year window – remain[ing] on defendant's website through 2014 does not give rise to a discrete claim accruing within the three-year window") (internal quotes and modifications omitted); *see also Minden*, 390 F. Supp. 3d at 467 (copyright infringement claim accrued when photographs were first posted on website); *Alfa Laval Inc. v. Flowtrend, Inc.*, No. CV H-14-2597, 2016 WL 2625068, at \*6 (S.D. Tex. May 9, 2016) (claim time-barred where "[t]here is no evidence that Defendants engaged in new acts of copyright infringement after it originally posted the Copyrighted Materials on its website, which occurred by 2009").  The reason for this rule is clear:  If every access of a copyrighted work on a website establishes a new claim for infringement, as Plaintiff contends, the statute of limitations becomes obsolete for the internet.  As Plaintiff's copyright infringement claim accrued when the Photographs were posted in 2011, and because Plaintiff cannot identify any subsequent infringements by BDG, his claim is time-barred and should be dismissed.

**The Use of the Photographs Was a Fair Use.**  Even if Plaintiff had sued the correct entity (which he did not), within the prescribed time period (which he did not), Plaintiff would *still* not have a viable copyright infringement claim because this use was permissible under the fair use doctrine, which allows unlicensed use of copyrighted works if "the copyrighted work is itself the subject of the story, transforming the function of the work in the new context."  *Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570, 581 (S.D.N.Y. 2020) (internal quotations omitted); *see also Boesen v. United Sports Publications, Ltd.*, No. 20CV1552ARRSIL, 2020 WL 6393010, at \*3 (E.D.N.Y. Nov. 2, 2020), *reconsideration denied*, No. 20CV1552ARRSIL, 2020 WL 7625222 (E.D.N.Y. Dec. 22, 2020).  Here, once the actual use is shown, it is clear that the Photographs themselves were the story being reported on (*see* Exh. A), and they were used for the obvious purpose of giving press coverage for Plaintiff's book.  Because all the remaining fair use factors – the nature of the copyrighted work, the amount and substantiality of the portion used, and the effect of the use on the market – all weigh in favor of a finding of fair use, this case may be dismissed on that ground as well.  *See Authors Guild v. Google, Inc.*, 804 F.3d 202, 213 (2d Cir. 2015) (all factors are "to be explored, and the results weighed together, in light of the purposes of copyright") (internal quotations omitted).

The proposed motion is without consent of Plaintiff.  In particular, BDG asked whether Plaintiff would consent, and Plaintiff's counsel did not respond on that point.

---

[4] Plaintiff's counsel is also a frequent filer of copyright lawsuits.  *See* https://donigerlawfirm.com/.



The Honorable Paul G. Gardephe, U.S.D.J.
August 2, 2021
Page 6

Respectfully submitted,

Eleanor M. Lackman

EML

cc:     All counsel of record (via ECF)

13363467.3